

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

10

11  CHARLES R. BURHARP,                     )   Case No. EDCV 04-01539-JWJ

12                        Plaintiff,        )   ORDER REMANDING ACTION
                                            )   TO THE COMMISSIONER FOR
13        vs.                               )   FURTHER PROCEEDINGS
                                            )
14  JO ANNE B. BARNHART,                    )
    Commissioner of the Social             )
15  Security Administration,                )
                                            )
16                        Defendant.        )
                                            )
17  ──────────────────────────────

18

19        Plaintiff seeks review of the decision of defendant Commissioner of the

20  Social Security Administration, denying plaintiff's application for

21  Supplemental Security Income under Title XVI of the Social Security Act.  As

22  discussed below, this Court vacates the decision of the Administrative Law

23  Judge and remands this action to the Commissioner for further proceedings.

24

25        I.  SUMMARY OF DISTRICT COURT PROCEEDINGS

26        On December 28, 2004, plaintiff Charles R. Buharp ("Plaintiff") filed a

27  "Complaint" to review the decision of the Commissioner under the Social

28  Security Act (hereinafter "Complaint").  On May 27, 2005, the parties

consented, pursuant to 28 U.S.C. § 636(c), to proceed before United States Magistrate Judge Jeffrey W. Johnson, and to have the Magistrate Judge conduct any and all further proceedings in this case and order the entry of final judgement.  On May 18, 2005, defendant filed an "Answer to Complaint" along with a copy of the Certified Administrative Record (hereinafter "CAR") of the administrative proceedings in this matter.  On October 12, 2005, the parties filed a Joint Stipulation addressing their respective claims.

This matter is now deemed under submission and ready for decision.

## II.  FACTUAL BACKGROUND

**A.     Summary of Administrative Proceedings**

On January 21, 2003, Plaintiff filed an application for Social Security Supplemental Security Income, alleging an onset of disability from January 27, 2001.  (CAR 44-50.)  His application was denied initially and upon reconsideration.  (CAR 24-33.)  Plaintiff subsequently filed a request for hearing before an Administrative Law Judge.  (CAR 34.)   On May 26, 2004, Administrative Law Judge F. Keith Varni (hereinafter "ALJ") commenced a hearing; Plaintiff appeared with counsel and testified on his own behalf.  (CAR 168-188.)  On June 21, 2004, the ALJ issued an opinion denying benefits. (CAR 7-14.)

On November 23, 2004, the Appeals Council denied review, thus making the decision of the ALJ the final decision of the Commissioner in this matter. (CAR 3-5.) See 20 C.F.R. § 404.900(a)(5).

**B.     Relevant Facts Regarding Plaintiff's Personal History, Medical Condition and Treatment**

Born on March 27, 1961, Plaintiff was forty-three years old at the time of his administrative hearing.  (CAR 13, 44.)  Plaintiff has a 12th grade education, and past work experience as a forklift operator at a home

improvement store. (CAR 69, 173.)  Plaintiff alleges that he became disabled on January 27, 2001, due to injuries resulting from a motor vehicle accident. (CAR 44, 52, 176.)

On February 15, 2001, Plaintiff began treatment at the High Desert Medical Office.  (CAR 88.)  On February 15, 2001, Plaintiff went to Kenneth Rose, M.D. with complaints of frequent, moderate, right-sided neck pain, numbness with radiating pain into his eyes and numbness in his left fingers. (CAR 89-90.)  Dr. Rose's initial impressions of Plaintiff included an acute sprain/strain, cervical spine with neuralgia and cervicocranial syndrome and an acute sprain/strain of the thoracic spine.  (CAR 91-92, 96.)  Dr. Rose additionally noted that Plaintiff had been advised by Bijan Zardouz, M.D. to exercise caution with regard to repetitive movements or prolonged positions involving the neck or back.  (CAR 95.)  Dr. Rose reported that Plaintiff previously underwent physical therapy and chiropractic adjustments.  (CAR 93.)

Bijan Zardouz, M.D. evaluated Plaintiff on November 19, 2001. (CAR 103.)  Plaintiff complained of neck pain, pain in both shoulders, and upper back pain.  (CAR 103.)  Additional complaints of muscle spasm in the right shoulder area and twitching of the right fingers were noted by Dr. Zardouz. (CAR 103.)  Results from a nerve conduction study on June 11, 2001, showed Plaintiff had moderate to severe bilateral median sensory-motor neuropathies at the wrist (carpal tunnel syndrome), bilateral ulnar sensory neuropathies, and normal left radial sensory response.  (CAR 122.)

On February 18, 2002, Dr. Zardouz performed a follow-up examination. (CAR 104.)  Plaintiff indicated that he was getting worse.  (CAR 104.) Dr. Zadouz reported that the stiffness and pain in Plantiff's cervical area had increased.  (CAR 104.)  Plaintiff complained of intermittent pain which he experienced to be more intense than before.  (CAR 104.)  Plaintiff reported

1    more frequent headaches, and numbness in his left hand.  (CAR 104.)

2         On March 18, 2002, Plaintiff returned to Dr. Zardouz for further

3    examination.  (CAR 105.)  Plaintiff complained of insomnia, mood swings and

4    short-temper, pain in the posterior cervical area and shoulders, and radiating

5    pain in his upper extremities and first three digits of his hands.  (CAR 105.)

6    Dr. Zardouz also reported Plaintiff's complaints of pain in the left eye

7    accompanied by headaches lasting from six hours to two days.  (CAR 105.)

8    Dr. Zardouz noted that Plaintiff's general physical examination was within

9    normal limits.  (CAR 106.)

10        On April 15, 2002, Plaintiff presented to Dr. Zardouz with complaints of

11   constant neck stiffness, numbness in the first four digits of the left hand, light

12   headache, and a tingling sensation with head and neck movements that

13   radiated to the left shoulder, upper extremity, and down to Plaintiff's left hand

14   and fingers.  (CAR 106.)  Dr. Zardouz commented that Plaintiff's neurological

15   examination remains stable at this time.  (CAR 109.)  Dr. Zardouz reported the

16   following impressions: musculoligamentous sprain/strain syndrome of the

17   cervical region; secondary headache (most probably due to the musculoskeletal

18   dysfunction in the cervical region verse underlying vascular headache that was

19   provoked by the accident); electrodiagnostic evidence of bilateral carpal tunnel

20   syndrome, moderate in degree; subjective complaint of radicular pain to the left

21   upper extremity; obesity; and increase serum globulin level.  (CAR 109.)

22        On May 2, 2002, Plaintiff complained underwent an MRI at Oracle

23   Imaging Services, Inc.  (CAR 100.)  The results revealed 3 mm. disc bulges at

24   C3-4, C4-5 and C5-6, causing mild diffuse flattening of the dura without

25   apparent neural impingement, and 2 mm. disc bulge at C7-T1, without central

26   or lateral spinal stenosis.  (CAR 100, 158.)

27        On May 3, 2002, Plaintiff complained to Dr. Zadouz of numbness in the

28   first three fingers of both hands, pain in the upper back and neck, and

1   difficulty lifting due to pain.  (CAR 99.)  Further, Plaintiff reported a stiffness
2   in the neck upon long sittings, and a sharp electric feeling in the cervical and
3   upper thoracic regions resulting from sudden movements of his head and neck.
4   (CAR 99.)   Dr. Zardouz reported the following impressions:
5   musculoligamentous sprain/strain syndrome of the cervical region; MRI
6   evidence of cervical disc bulges at multiple levels; headache; evidence of carpal
7   tunnel syndrome; musculoligamentous sprain/strain syndrome of the upper
8   thoracic region; obesity; subjective complaint of radicular pain to the left upper
9   extremity; and increased serum globulin level.  (CAR 101.)  Based on his
10  impressions and the MRI findings, Dr. Zardouz advised Plaintiff to avoid
11  heavy lifting, repetitive flexion and extension movements of the head and neck,
12  and work above shoulder level.  (CAR 101.)

13          On March 25, 2003, Plaintiff underwent a neurological evaluation with
14  John S. Woodard, M.D.  (CAR 129-30.)  Dr. Woodard described Plaintiff as a
15  reasonably well groomed, casually dressed, very obese Caucasian man of forty-
16  two years with mannerisms suggesting slight emotional tension and emotional
17  over-reactivity.  (CAR 129.)  Dr. Woodard diagnosed a chronic
18  muscloligamentos strain.  (CAR 129-30.)  Dr. Woodard commented that
19  Plaintiff should probably not work for extended periods with his arms above
20  shoulder level, but otherwise noted no apparent limitations in Plaintiff's
21  physical activities on the basis of his neurologic status.  (CAR 131.)

22          On April 11, 2003, a DDS physician completed a Physical Residual
23  Functional Capacity Assessment of Plaintiff.  (CAR 143.)  It was determined
24  that Plaintiff could lift less than 20 pounds, lift and carry less than 10 pounds,
25  stand and/or walk with normal break for a total of approximately 6 hours in an
26  8-hour workday, and sit with normal breaks for approximately 6 hours in an 8-
27  hour workday.  (CAR 137,143.)  Plaintiff's ability to push and/or pull
28  (including the operation of hand and/or foot controls) was limited in both the

1   upper and lower extremities.  (CAR 137.)  Plaintiff was limited in his ability to

2   reach in all directions, and in his handling capabilities.  (CAR 139.)

3   Furthermore, Plaintiff had no environmental limitations except for vibration

4   and hazardous heights.  (CAR 140.)

5        On July 8, 2003, Plaintiff was examined at Arrowhead Regional Medical

6   Center emergency room by Dr. Sin.  (CAR 145.)  Dr. Sin's impressions

7   included an acute exacerbation of chronic neck pain.  (CAR 145.)  On October

8   7, 2003, Plaintiff went to Arrowhead Regional Medical Center emergency room

9   and was examined by Dr. Anderson.  (CAR 149.)  Dr. Anderson diagnosed

10  Plaintiff as having a muscle spasm of the upper back.  (CAR 149.)  Plaintiff

11  again presented to the Arrowhead Regional Medical Center emergency room on

12  October 28, 2003.  (CAR 147.)  Dr. Lee examined Plaintiff and diagnosed him

13  with chronic neck pain.  (CAR 147.)  On December 1, 2003, Plaintiff traveled

14  to the emergency room at Arrowhead Regional Medical Center, where Dr.

15  Strobel diagnosed him as having an acute exacerbated chronic neck pain and a

16  cervical disc bugle.  (CAR 153.)

17  **C.   Testimony Before the Administrative Law Judge**

18            <u>Plaintiff's Testimony</u>

19        Plaintiff appeared at the May 26, 2004 administrative hearing and

20  testified on his own behalf.  (CAR 168-88.)  Plaintiff stated that he was forty-

21  three years old and had a high school education.  (CAR 169.)  Plaintiff testified

22  that he was last employed prior to a motor vehicle accident which occurred in

23  January 2001.  (CAR 172, 175.)  Plaintiff testified that before the accident he

24  worked as a forklift operator at Home Base.  (CAR 173.)  Plaintiff further

25  testified that he has past work experience in pizza delivery.  (CAR 173.)

26        Plaintiff stated that he resides with his brother and sister in his sister's

27  house.  (CAR 170.)  Plaintiff testified that the majority of his financial support

28  comes from his sister, and that his sister does his shopping and buys his

clothes.  (CAR 171.)  Plaintiff noted that his brother does his laundry.  (CAR 183.)

Plaintiff stated that before the accident he attempted to start a landscaping business, but was paid only for a couple of apartments.  (CAR 173.)  When asked about the absence of recorded earnings for the past 10 or 11 years, Plaintiff stated that he was working with his uncle and not filing income tax returns.  (CAR 174.)  Plaintiff testified that he quit working in 1995 and 1996 to take care of his parents before they passed away.  (CAR 174-75.)

Plaintiff stated that he is unable to work because he suffers from neck pain, herniated disks, pain through the shoulders and back, numbness in the left fingers, and spasms.  (CAR 176-78.)  Plaintiff explained that he cannot hold things and that he has a problem carrying things.  (CAR 178-79.)  Plaintiff testified that he has a difficult time walking and sitting, but estimated that he could walk as far as one-half mile on a good day.  (CAR 179, 184.)  Plaintiff noted that he could not pick up a gallon of milk, use a hammer or lean over.  (CAR 179.)

Plaintiff also testified that he suffers from headaches everyday, and while medications ease the pain, the pressure keeps him from doing anything.  (CAR 180.)  Plaintiff stated that he had not slept well since the accident, and attributed his difficulty sleeping to pain.  (CAR 180-81.)  Plaintiff testified that he tries to get up by 7:00 AM to help his sister get ready for work in the morning.  (CAR 181.)

Plaintiff states that he cannot work on the computer at home because he is uncomfortable.  (CAR 183.)  Plaintiff explained that he has a hard time moving his head from side to side, or up and down because of neck pain.  (CAR 183-184.)  Plaintiff testified that he now has stuttering problems with his speech and needs reading glasses to see clearly.  (CAR 177.)  Plaintiff notes

- 7 -

1  that since the accident he has not driven, and that his license is expired.  (CAR
2  186.)  Plaintiff testified that he could not drive because he cannot keep his
3  hands straight, his hands go numb, and he does not have the necessary range of
4  motion to look where he is going.  (CAR 186.)

5        Plaintiff testified that he weighs over 400 pounds, and states that he has
6  gained approximately 200 pounds since the accident in January 2001.  (CAR
7  169.)  Plaintiff stated that doctors have advised him to lose weight.  (CAR
8  185.)  Plaintiff explained that he has tried a low-carbohydrate diet, but it does
9  not work for him.  (CAR 185.)  Plaintiff recalls doctors talking to him about
10 surgical options, but Plaintiff states that he cannot afford to have surgery.
11 (CAR 185.)

12 **D.    The ALJ's Decision**

13       On June 21, 2004, the ALJ issued a decision denying Plaintiff's
14 application for benefits.  (CAR 7-14.)   The ALJ determined that Plaintiff has
15 level III (morbid) obesity and minor degenerative changes in the cervical spine
16 that are considered "severe" under 20 CFR § 416.921, but that Plaintiff's
17 medically determinable impairments have never met or medically equaled one
18 of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (CAR
19 13.)  The ALJ found Plaintiff's allegations regarding his limitations not
20 credible, and that he retains the residual functional capacity to perform
21 unskilled light or medium work.  (CAR 13-14.)  Thus, ALJ determined that
22 Plaintiff's impairments do not prevent him from performing his past relevant
23 work as a forklift driver.  He concluded that based on an exertional capacity for
24 medium work, and Plaintiff's age, education, and work experience, Medical-
25 Vocational Guidelines Rules 203.28, 203.29, 202.19, and 202.20, Appendix 2,
26 Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."
27 (CAR 14.)  The ALJ further concluded that even if it were assumed that the
28 claimant has no vocationally relevant experience, his capacity for medium work

1   is substantially intact and has not been significantly compromised by any

2   nonexertional limitations and thus, using the above references the claimant

3   would still be found "not disabled." (CAR 14.)   Accordingly, the ALJ

4   concluded that Plaintiff was not under a "disability" as defined in the Social

5   Security Act and thus, was not eligible for Supplemental Security Income

6   payments.  (CAR 14.)

7   ### III.  STANDARD OF REVIEW

8         Under 42 U.S.C. § 405 (g), a district court may review the

9   Commissioner's decision to deny benefits.  The Commissioner's  (or ALJ's)

10  findings and decision should be upheld if they are free of legal error and

11  supported by substantial evidence.  However, if the court determines that

12  findings are based on legal error or are not supported by substantial evidence in

13  the record, the court may reject the findings and set aside the decision to deny

14  benefits.  See McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002);

15  Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v.

16  Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

17        "Substantial evidence is more than a scintilla, but less than a

18  preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  It is

19  "relevant evidence which a reasonable person might accept as adequate to

20  support a conclusion." (Id.)  To determine whether substantial evidence

21  supports a Commissioner's findings, the reviewing court "must review the

22  administrative record as a whole, weighing both the evidence that supports and

23  the evidence that detracts from the Commissioner's conclusion."  (Id.)  "If the

24  evidence can reasonably support either affirming or reversing," the reviewing

25  court "may not substitute its judgment" for that of the Commissioner.

26  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

27  ///

28  ///

# IV.  THE FIVE-STEP ANALYSIS

**Initial Five-Step Analysis**

A disability claimant must show that a medically determinable physical or mental impairment prevents the claimant from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months.  Reddick, 157 F.2d at 721; 42 U.S.C. § 423 (d)(1)(A).

Disability claims are evaluated according to the five-step procedure described below.  See Bowen v. Yucker, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Reddick, 157 F.3d at 721; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); 20 C.F.R §§ 404.1520, 416.920.

**Step one:**  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

**Step two:** Does the claimant have a "severe impairment"?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

**Step three:**  Does the claimant's impairment or combination of impairments meet or equal an impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (hereinafter "the Listings")?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

**Step four:**  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

**Step five:**  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester, 81 F.3d at 828 n.5.

"Severe," (at step two) means any impairment or combination of impairments that significantly limits the physical or mental ability to perform

1    basic work activities.  "Residual functional capacity" ("RFC") is what a

2    claimant can still do despite existing "exertional" (i.e, strength related) and

3    "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 ns.5-6

4    (9th Cir. 1989).  Nonexertional limitations restrict ability to work without

5    directly limiting strength, and include mental, sensory, postural, manipulative

6    and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir.

7    1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. §404.1569a(c).[1]

8         A claimant has the burden, through step four, of proving inability to

9    perform past relevant work.  Reddick, 157 F.3d at 721; Drouin v. Sullivan, 966

10   F.2d 1255, 1257 (9th Cir. 1992).  If this burden is met, a prima facie case of

11   disability is established and the burden shifts to the Commissioner at step five

12   to establish that the claimant can perform alternative work.  Reddick, 157 F.3d

13   at 721; Drouin, 966 F.2d at 1257; 20 C.F.R. §§ 404.1520,  416.920.  The

14   Commissioner can meet this burden by reference to the Medical-Vocational

15   Guidelines ("Grids") at 20 C.F.R. Part 404, Subpart P, Appendix 2, or by

16   relying on vocational expert ("VE") testimony.  Osenbrock, 240 F.3d at 1162

17   (citing Desrosiers v. Secretary, 846 F.2d 573, 576-77 (9th Cir. 1988)).  If VE

18   testimony is used, "the VE must identify a specific job or jobs in the national

19   economy having requirements that the claimant's physical and mental abilities

20   and vocational qualifications would satisfy." Osenbrock, 240 F.3d at 1162-63.

21   ///

22   ///

23

24        [1]Nonexertional limitations include difficulty in one or more of the following:
25   functioning because of nervousness, anxiety or depression, maintaining attention or
     concentration; understanding instructions; seeing or hearing, tolerating physical features
26   of a work setting; and manipulative or postural functions (e.g. reaching, handling,
     stooping or crouching).  See 20 C.F.R. § 404.1569a(c)(1). Pain may be either an
27   exertional or nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765
28   F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

# V.   DISCUSSION

**A.     The ALJ's Evaluation**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (CAR 10.)  The ALJ determined at step two that Plaintiff suffers from an impairment or a combination of impairments considered "severe" under 20 C.F.R. § 404.1520(b).  (CAR 11.)  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the impairments listed in Appendix 1, Subpart P Regulations No. 4.  (CAR 11.)  At step four, the ALJ found that Plaintiff retains the functional capacity to perform his past relevant work as a forklift operator.  (CAR 12.)  Thus, the ALJ concluded that plaintiff is not disabled as defined by the Social Security Act.  (CAR 24.)

The parties have stipulated that the following two issues are in dispute, to wit:

1.      Whether the ALJ properly considered the opinion of disability submitted by the treating physician; and

2.      Whether the ALJ properly considered the opinion of the examining physician.

(Joint Stipulation, p. 2.)

**B.     Treating Physicians**

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  Id. at 830 (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing

1    "'specific and legitimate reasons' supported by substantial evidence in the

2    record for doing so."  Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th

3    Cir. 1983)).

4          Plaintiff argues that the ALJ failed to consider the treating physician's

5    opinion that the plaintiff is unable to do overhead work without pain and the

6    need to exercise caution with regard to repetitive motions and prolonged

7    positions of the neck and back.  (Joint Stipulation, p. 3.)  Defendant argues

8    that the ALJ did consider the treating physician's opinion and rendered a

9    decision consistent with the treating physician's opinion.  In the alternative,

10   defendant argues that the ALJ has met his burden by giving specific and

11   legitimate reasons for rejecting Dr. Rose's findings.  (Id. at 4.)

12         A  treating doctor's opinion may be rejected only for "clear and

13   convincing" reasons supported by substantial evidence in the record.  Id. at 830

14   (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Plaintiff's

15   treating physician, Dr. Rose, concluded that Plaintiff suffered acute

16   sprain/strain, neuralgia in his cervical spine and cervicocranial syndrome, in

17   addition to an acute sprain/strain of the thoracic spine.  (CAR 91-92, 96.)

18   Dr. Rose additionally noted from a medical report that the patient had been

19   advised to exercise caution with regard to repetitive movements or prolonged

20   positions involving the neck or back.  (CAR 95.)  The ALJ's only stated reason

21   for rejecting Dr. Rose's opinion was that the reports were litigation generated

22   through the claimants attorney pursuant to a motor vehicle accident.  (CAR

23   11.)  The ALJ's stated reason is not based on objective medical evidence from

24   the record and thus is inadequate to support his rejection on Dr. Rose's

25   opinion.  This conclusory rejection of a treating physician's opinion is

26   insufficient to satisfy the ALJ's requirement to present "clear and convincing"

27   reasons supported by substantial evidence in the record.  Lester, 81 F.3d at

28   830.

**C. Examining Physicians**

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).   Like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); Lester, 81 F.3d at 831.  Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, those opinions are credited "as a matter of law."  Lester v. Chater, 81 F3d at 834 (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).

Plaintiff's examining physician Dr. Zardouz advised Plaintiff to preclude himself from heavy lifting, repetitive flexion and extension movements of the head and neck, and work above shoulder level.  (CAR 101.)  The ALJ's only stated reason for rejecting Dr. Zardouz's opinion was that the medical reports were litigation generated through the claimant's attorney pursuant to a motor vehicle accident.  (CAR 11.)   The ALJ's reason for rejecting Dr. Zardouz's opinion  is inadequate and not based on objective medical evidence from the record.  This conclusory and ambiguous rejection of an examining physician's opinion is insufficient to satisfy the ALJ's requirement to present specific and legitimate reasons that are supported by substantial evidence in the record.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); Lester, 81 F.3d at 831.

**D.   Remedy.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has

1   been fully developed, it is appropriate to exercise this discretion to direct an
2   immediate award of benefits.  Id. at 1179 ("the decision of whether to remand
3   for further proceedings turns upon the likely utility of such proceedings").
4   However, where there are outstanding issues that must be resolved before a
5   determination of disability can be made, and it is not clear from the record that
6   the ALJ would be required to find the claimant disabled if all the evidence were
7   properly evaluated, remand is appropriate.  Id.

8        Here, this Court has concluded that the ALJ failed to properly consider
9   the opinions of Plaintiff's treating and examining physicians.  Accordingly,
10  remand is necessary so that further administrative proceedings may be
11  conducted.   Specifically, on remand, the ALJ should consider the findings and
12  conclusions of Dr. Rose and Zardouz, and, in light of that evidence, determine
13  whether Plaintiff suffers from a disability as defined by the Social Security Act.
14  If the ALJ chooses to reject the opinions of Dr. Rose and Zardouz, the ALJ
15  must provide clear and convincing reasons supported by substantial evidence in
16  the record for doing so.  In addition, the ALJ should reassess Plaintiff's past
17  relevant work to determine adequately the relation of Plaintiff's residual
18  functional capacity to the past work performed.  If it is determined on remand
19  that Plaintiff is unable to perform any past relevant work, the ALJ should
20  proceed to step five to determine whether Plaintiff has the ability to perform
21  specific jobs within Plaintiff's abilities.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

- 15 -

1

## ORDER

2      Accordingly, IT IS HEREBY ORDERED that this action is remanded to

3   the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

4      IT IS FURTHER ORDERED that the Clerk of the Court serve copies of

5   this order and the Judgement herein on all parties or their counsel.

6

7   DATED:  June 22, 2006

8

9                                        _____/s/_____

10                                       JEFFREY W. JOHNSON
                                         United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28